**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **HUNTER DARLING, *et al*,** | ) | **CASE NO. 1:12 CV 194** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **v.** | ) | |
| | ) | **OPINION AND ORDER** |
| **LAKE COUNTY BOARD** | ) | |
| **OF COMMISSIONERS, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, J.:**

*Pro se* Plaintiffs Hunter Darling, Amanda Darling, Joseph Zeigler, and minor children

C.H.D. and I.M.D., filed this action under 33 U.S.C. §§ 1251,1334, 1342, 1344; 42 U.S.C. §§ 1983,

1985, 1986 and 4001-4129 and "any/all other applicable Federal Statutes on violations of flood

plain management" against Lake County Commissioners Raymond Sines,  Robert Aufuldish,  and

Daniel Troy, Lake County Engineer James Gills, Lake County Prosecutor Charles Coulson, Lake

County Assistant Prosecutor Michael DeLeone, Lake County General Health District Supervisor

Laura Kramer Kuns, Lake County General Health District Registered Sanitarian Susan Bell,

Concord Township Trustees Caroline Luhta, Christopher Galloway, and Paul Malchesky, Concord

Township Fiscal Officer Amy Dawson, the Ohio Department of Transportation ("ODOT") ODOT

Director Jerry Wray, the Ohio Department of Natural Resources ("ODNR"), ODNR Director Scott Zody, the Ohio Environmental Protection Agency ("EPA"), Ohio EPA Director Scott Nally, the United States Army Corp of Engineers, Army Corp of Engineers Resource Management Director Wesley C. Miller, Federal Emergency Management Agency ("FEMA"), and FEMA Director William Craig Fugate.   In the Complaint, Plaintiffs assert Defendants permitted developers to install storm drains which have an adverse affect on property they own or on which they reside. They seek declaratory, monetary and injunctive relief.

## I. BACKGROUND

The Complaint, although substantial in size, contains very few factual allegations. Plaintiffs allege Hunter Darling purchased property located at 11864 Concord-Hamden Road in Concord Township, Ohio 44077 in 2005.  He, Amanda Darling, Joseph Ziegler, and minor children I.M.D. and C.H.D reside there.  Plaintiffs contend Defendants approved the installation of storm drains or sewer pipes in housing developments.  They claim these pipes drain into an existing flood plain of the Jordan Creek.  They contend that from 2006 to the present, this situation has led to flooding of contaminated water in the yard and in the residence at the Concord-Hamden Road property whenever it rains or snows significantly.  Water samples were taken by the Lake County General Health District  from standing water on the Concord-Hamden Road property on November 16, 2011.  These samples were then tested, and the results indicated that no significant contamination was present.[1]  Plaintiffs claim the test results were altered by Defendants.

Plaintiffs assert five claims for relief.  First, they allege Lake County Commissioners

---

[1]     The sample revealed the presence of 240 fecal coliform per 100 ml sample.  The public health nuisance standard is 5000 fecal coliform per 100 ml.  The results were also below the primary contact standard which is 2000 fecal coliform per 100 ml.  (ECF No. 5-1 at 3, 5).

Raymond Sines, Robert Aufuldish, and Daniel Troy, Lake County Engineer James Gills, Concord Township Trustees Caroline Luhta, Christopher Galloway, and Paul Malchesky, ODOT, ODOT Director Jerry Wray, the ODNR, ODNR Director Scott Zody, the Ohio EPA, and Ohio EPA Director Scott Nally, acting in their official capacities,  violated "clearly established Federal FEMA and Presidential Executive Orders on Flood Plain Management, Federal Clean Water Act as well as other clearly established Federal Policies/Procedures/Acts for said State Government Officials to follow and is mandated under Federal Flood Plain Management." (ECF No. 1 at 7).  In addition, they claim these Defendants, in their official capacities, violated their First, Fourth, and Fifth Amendment rights as well as their Fourteenth Amendment rights to Equal Protection and Due Process.

Plaintiffs' Second Claim is captioned "State Statutes violated by State."  In this claim, they allege Sines, Aufuldish, Troy, Gills, ODOT, Wray, ODNR, Zody, the Ohio EPA, and Nally, acting in their official capacities,  violated "clearly established [policies, procedures, or statutes] by the Ohio Environmental Protection Agency (EPA), Ohio Department of Natural Resources (DNR) as well as other clearly established Ohio Policies/Procedures/Acts for said State Government Officials to follow and mandated on Ohio Flood Plain Management." (ECF No. 1 at 11).  They again include claims for violation of the First, Fourth, Fifth, and Fourteenth Amendments.

Plaintiffs' Third Claim is entitled "Statutes violated by Feds." (ECF No. 1 at 13).  They assert the United States Army Corp of Engineers, Army Corp of Engineers Employee Wesley C. Miller, FEMA, and FEMA Director William Craig Fugate, acting in their official capacities, violated "were literally/actually negligence [sic] (per se) by blatantly violating clearly established Federal FEMA and Presidential Executive Orders on Flood Plain Management, Federal Clean Water

Act as well as other clearly established Federal Policies/Procedures/Acts for said State Government Officials to follow and is mandated under Federal Flood Plain Management." (ECF No. 1 at 7). In addition, they claim these Defendants, in their official capacities, violated their First, Fourth, Fifth, and Fourteenth  Amendment rights.

Plaintiffs' Fourth Claim asserts individual capacity causes of action.  They contend Sines, Aufuldish, Troy, Gills, Kramer Kuns, Bell, Luhta, Galloway, Malchesky, Dawson, Wray, and Zody, in their individual capacities, violated "clearly established FEMA and Presidential Executive Orders, Federal/Ohio Environmental Protection Agency (EPA), as well as other clearly established Federal/State Policies/Procedures for said State Government Officials to follow and are mandated under Flood Plain Management."  (ECF No. 1 at 15).  They also assert claims against these Defendants, in their individual capacities for violations of their First, Fourth, Fifth, and Fourteenth Amendment rights.

Plaintiffs' Fifth Claim has several parts to it.  They first contend Lake County Prosecutors Charles Coulson and Michael DeLeone conspired, in violation of 43 U.S.C. § 1985, with Sines, Aufuldish, Troy, Gills, Luhta, Galloway, and Malchesky by refusing to disclose public records Plaintiffs requested under the Freedom of Information Act, 5 U.S.C. § 552.  They next allege Dawson conspired, in violation of 43 U.S.C. § 1985, with  Luhta, Galloway, and Malchesky by refusing to disclose public records Plaintiffs requested under the Freedom of Information Act. Plaintiffs then allege that Kramer Kuns and Bell conspired, in violation of 43 U.S.C. § 1985, with Coulson and DeLeone by "intentionally failing/refusing to take water samples as required under Ohio Statutes/Laws on November 16, 2011, and then reporting inaccurate findings to the Lake County Prosecutors Office...to cover up actual negligence of other Lake County Defendants." (ECF

No. 1 at 17.)  Finally, they allege Coulson, DeLeone, Kramer Kuns, and Bell conspired together, in violation of 43 U.S.C. § 1985, "to cover-up negligence (per se) that said other Co-Defendants actually signed/approved such developments to drain into a known Flood Plain, and/or by said Defendants conspired to cover-up the fact that said other Co-Defendants failed/refused to get mandated approval on such developments as required under both Federal/Ohio Flood Plain Management Statutes."  (ECF No. 1 at 18.)

Finally, Plaintiffs request certification as a class action.  They assert that their claims against the Defendants "are predominate [sic] or identical, and that the State/Federal Statutes on Flood Plain Management chronologically states [sic] that Defendants need approval from other Co-Defendants to drain into a Flood Plain and that it would not affect environment/property/life of Plaintiffs." (ECF No. 1 at 18.)  Based on this statement, they conclude they meet the prerequisites for class certification under Federal Civil Procedure Rule 23.

On February 6, 2012, Lake County General Health District Supervisor Laura Kramer Kuns, and Registered Sanitarian Susan Bell filed a Motion to Dismiss pursuant to Federal Civil Rule 12(b)(6).  (ECF No. 5).  In the Motion, they contend there are no allegations against them suggesting they personally engaged in misconduct.  They claim Plaintiffs fail to allege class-based discrimination to support a claim for denial of Equal Protection and assert there are no facts suggesting they denied Plaintiffs procedural due process.  They contend they are entitled to qualified immunity.  Finally, they claim the Plaintiffs failed to adequately allege the existence of a conspiracy to violate civil rights under 42 U.S.C. § 1985.

The Ohio EPA and Director Scott Nally filed a Motion to Dismiss under Federal Civil Procedure Rules 12(b)(1) and 12(b)(6) on February 21, 2012.  (ECF No. 11).  They assert that

Plaintiffs' claims for monetary damages against the Ohio EPA and claims against Nally in his official capacity are barred by the Eleventh Amendment.  They contend Plaintiffs failed to allege facts to suggest Nally could be held liable, in his individual capacity, under any of the federal statutes cited, and that they are nonetheless entitled to qualified immunity.  Finally, they claim Plaintiffs failed to demonstrate any constitutional right violated by Nally, have not adequately pled the existence of a conspiracy to support a claim under § 1985, and failed to specify which provisions of the Clean Water Act, FEMA regulation or Executive Order Nally or the Ohio EPA violated.

The ODNR and Scott Zody also filed a Motion to Dismiss pursuant Federal Civil Procedure Rules 12(b)(1) and 12(b)(6) on February 21, 2012.  (ECF No. 12).  They too assert that Plaintiffs' claims for monetary damages against the ODRN and claims against Zody in his official capacity are barred by the Eleventh Amendment.  They contend they are entitled to qualified immunity.  They assert Plaintiffs failed to allege facts to support any of their constitutional claims, conspiracy claims under § 1985, or claims under the Clean Water Act.

Plaintiffs filed a Motion for Default Judgment on February 22, 2012.  (ECF No. 14).  In the Motion, Plaintiffs contend they mailed copies of the Complaint and Summonses to the Defendants by certified mail on January 28, 2012.  They filed the Return of Service along with undated copies of the certified mail "green cards" on February 21, 2012.  Plaintiffs claim the Defendants have not filed an Answer or responsive pleading within 21 days as required by Federal Civil Procedure Rule 12(b)(1), and claim they are entitled to default judgment.

On February 21, 2012, counsel for ODOT and Wray filed a Motion for Extension of Time to February 28, 2012 to File an Answer.  Counsel indicated Wray had been served on January 30, 2012 and his Answer was due on February 21, 2012.  Counsel claimed he was involved in discovery

depositions in another case and was traveling to Cleveland from Columbus during the weeks of February 13, 2012 and February 20, 2012 which prevented him from being able to complete a response to the Complaint.

Without receiving a response to the Motion for Extension of Time, ODOT and Wray filed, on March 1, 2012, a Motion for Leave to File a Motion to Dismiss Instanter pursuant to Federal Civil Procedure Rules 12(b)(1) and 12(b)(6).  (ECF No. 28).  In their Motion to Dismiss, they assert that Plaintiffs' claims for monetary damages against ODOT and against Wray, in his official capacity, are entitled to Eleventh Amendment immunity.  They indicate Plaintiffs have not included factual allegations indicating how ODOT or Wray played an active role in approving the placement and construction of drain and sewer pipes.  They contend they are entitled to qualified immunity.  They further assert there is no private remedy available under the Federal Clean Water Act against Wray.  They indicate there can be no procedural due process claim for taking of property unless available state court remedies, in this case, mandamus, are inadequate.  Finally, they allege Plaintiffs did not establish a denial of equal protection, or the existence of a conspiracy to violate civil rights.

On February 20, 2012, the Lake County Defendants Sines, Aufuldish, Troy, Gills, Coulson, and DeLeone also filed a Motion for Enlargement of Time until March 12, 2012 to Move or Plead to Plaintiffs' Complaint.  Counsel claimed they had recently been retained and required additional time to meet with their clients and file a response.

Apparently assuming the Court had granted the Motion, the Lake County Defendants filed a Motion to Dismiss pursuant Federal Civil Procedure Rules 12(b)(1) and 12(b)(6) on March 12, 2012.  (ECF No. 34).  They contend Plaintiffs' claims under 42 U.S.C. §1983 and state law are not timely filed under the applicable statute of limitations period for incidents of flooding occurring

prior to January 26, 2010.  They further allege Plaintiffs failed to state a valid constitutional claim against them and failed to identify a particular claim under the provisions of the Federal Emergency Management Act, the provisions of the Clean Water Act, or the unspecified Executive Orders.  They indicate Plaintiffs have not stated a valid conspiracy claim under 42 U.S.C. §1985 and there are no allegations suggesting the actions of the Defendants were racially motivated.  They assert they are entitled to qualified immunity, and contend they are entitled to sovereign immunity under Ohio Revised Code §2744 for the state claim asserted against them.

On May 21, 2012, FEMA, Fugate, Miller, and the Army Corp of Engineers filed a Motion to Dismiss.  (ECF No. 51).  They contend that any negligence claims against them must be asserted under the Federal Tort Claims Act.  They claim the Court lacks subject matter jurisdiction to decide these claims because Plaintiffs have not exhausted administrative remedies prior to filing suit.  They assert sovereign immunity, and claim Plaintiffs did not allege a factual basis for their claims.

## II.  LAW AND ANALYSIS

**Motion for Default Judgment**

Federal Civil Procedure Rule12(a)(1) provides that unless another time is specified by this Rule or by federal statute, the time for filing an Answer or responsive pleading is 21 days after service of the Summons and Complaint.  The United States, United States Agencies, and United States employees, sued in their official capacity,  must file an Answer or responsive pleading within 60 days after service on the United States Attorney.  Fed.R.Civ.P. 12(a)(2).  Before serving an Answer, a party may file a Motion to Dismiss asserting any of the grounds listed in Rule 12.  The filing of such a Motion alters the time period for filing an Answer, in the event that the Motion is denied.  Fed.R.Civ.P. 12(a)(4).

The method of computing time is found in Federal Civil Procedure Rule 6(a).  When calculating the 21 days to file an Answer or responsive pleading, or 60 days for the United States government officials, the day of service is excluded.  Fed.R.Civ.P. 6(a)(1)(A).  Thereafter, every day, including Saturdays, Sundays and legal holidays are counted.  Fed.R.Civ.P. 6(a)(1)(B).  If the last day of the period falls on a Saturday, Sunday or legal holiday, however, the response is due by the end of the next business day that is not a legal holiday.  Fed.R.Civ.P. 6(a)(1)(C).  The last day of the period ends for those filing electronically at midnight in the Court's time zone, or for those filing manually, at the time the Clerk's office is scheduled to close.  Fed.R.Civ.P. 6(a)(4)(A) and (B).

The Court may extend the time for filing a responsive pleading.  Fed.R.Civ.P. 6(b)(1).  If a Motion is made to the Court before the original time expires, the Court may allow an extension of time for good cause.  Fed.R.Civ.P. 6(b)(1)(A).  If the request is made after the original time expires, the Court may grant an extension if good cause is shown and the party failed to act because of excusable neglect.  Fed.R.Civ.P. 6(b)(1)(B).

The ODNR, Zody, Luhta, Galloway, Malchesky, Dawson, Kramer Kuns and Bell were served with the Complaint on January 30, 2012.  Their Answer date was February 20, 2012.  Because February 20, 2012 was a legal holiday, the response was due on February 21, 2012.  ODNR and Zody filed a timely Motion to Dismiss on February 21, 2012.  Luhta, Galloway, Malchesky, and Dawson, timely filed an Answer on February 20, 2012.  Kramer Kuns and Bell filed a timely Motion to Dismiss on February 2, 2012.  None of these Defendants are in default.

The Ohio EPA and Nally were served with the Complaint on February 1, 2012.  Their responsive pleading was due on February 22, 2012.  These Defendants timely filed a Motion to

Dismiss on February 21, 2012.  They also are not in default.

ODOT and Wray were served with the Complaint on January 30, 2012.  Their Answer was therefore due on February 21, 2012.  At 11:16 P.M. on February 21, 2012, these Defendants filed a Motion for Extension of Time Until February 28, 2012 to File a Responsive Pleading indicating counsel for the Defendants was in Cleveland for depositions the week before the Answer was due. The Court did not rule on the Motion.  These Defendants nevertheless filed a Motion for Leave to File a Motion to Dismiss Instanter on March 1, 2012, and attached the proposed Motion to Dismiss.

Lake County Defendants Sines, Aufuldish, Troy, Gills, Coulson and DeLeone indicate they were served with the Complaint on January 31, 2012.  Their response was due on February 21, 2012.  On February 20, 2012, the Defendants filed a Motion to Enlarge Time for Filing an Answer to March 12, 2012.  Although the Court did not rule on the Motion, the Defendants filed their Motion to Dismiss on March 12, 2012.

In response to Plaintiffs' Motion for Default Judgment, the Lake County Defendants assert that "the filing of a leave to plead is an appropriate pleading to protect against default judgment." (ECF No. 33 at 2.)  They cite an unreported case from the Southern District of Ohio, *Torrance v. Cincinnati Mortg. Co. Inc.*, No. 1:08–CV–403, 2009 WL 799642 (S.D. Ohio Mar. 24, 2009) as authority for this position, and contend their Motion to Dismiss was timely filed.  While the District Court for the Southern District of Ohio in *Torrance* did state that "[p]ursuant to Fed.R.Civ.P. 6(b), the Court may enlarge the time period for filing a motion or other responsive pleading to the complaint" and "each of the Defendants filed appropriate pleadings in order to avoid the entry of default judgment against them," it also noted that the Defendant "filed a motion for an extension of time ... to file responsive pleadings, ...[and] was granted an extension of time until December 19,

-10-

2008 in which to file a responsive pleading." *Id.* It was the granting of the Defendant's Motion for Extension of Time and the subsequent filing of the timely response that made the default judgment inappropriate. There is no suggestion in that case, or in Federal Civil Procedure Rule 6(b), that the filing of the Motion, alone, automatically protects against default judgment.

Because both ODOT and Wray, and the Lake County Defendants filed Motions for Extensions of Time, the Court must first determine, pursuant to Federal Civil Procedure Rule 6(b), if one or both of the Motions were filed before the original Answer date expired. If the Motion was filed before the Answer was due, the Court may extend the filing deadline if the Defendant demonstrated good cause for requesting the extension. Fed.R.Civ.P. 6(b)(1)(A). If the Motion was filed after the Answer was due, the Defendant must not only demonstrate good cause for requesting the extension, but also must demonstrate excusable neglect for failing to act in a timely manner. Fed.R.Civ.P. 6(b)(1)(B). "Neglect exists where the failure to do something occurred because of a simple, faultless omission to act, or because of a party's carelessness." *Turner v. City of Taylor*, 412 F.3d 629, 650 (6th Cir.2005). Whether neglect was "excusable" is an equitable determination based on consideration of all relevant circumstances. *Id.* Under both subsection (A) and (B) of Rule 6(b)(1), the decision to grant or deny the Defendants' Motion for Enlargement of Time to file their Answer is a matter committed to the Court's discretion. *Morgan v. Gandalf, Ltd.*, No. 05-3189, 2006 WL 238321, at *2 (6th Cir. Jan. 31, 2006).

The Court finds both Motions to be timely filed. The Lake County Defendants filed their Motion on February 20, 2012, one day before their responsive pleading was due. ODOT and Wray filed their Motion at 11:16 P.M. on February 21, 2012, 44 minutes before the expiration of the "last day" for electronically filing an Answer or responsive pleading. Fed.R.Civ.P. 6(a)(4)(A). Counsel

-11-

for the Lake County Defendants indicated that they had recently been retained and required additional time to meet with their clients.  Counsel for ODOT and Wray indicated he was out of his office the week before the Answer was due and required additional time to prepare a response.  The Court determines that each of these Defendants established good cause for requiring an extension.  The Motion for Enlargement of Time filed by Sines, Aufuldish, Troy, Gills, Coulson and DeLeone (ECF No. 10) and the Motion for Extension of Time filed by ODOT and Wray (ECF No. 13) are **granted**.

The Court notes that although the Lake County Defendants filed their Motion to Dismiss within the time period of the extension they requested, ODOT and Wray did not file their Motion within their requested time period.  Their Motion sought an extension to February 28, 2012, to file a responsive pleading.  ODOT and Wray filed a Motion for Leave to File Motion to Dismiss Complaint Instanter on March 1, 2012.  As 2012 is a leap year, the Motion to Dismiss was filed two days after the expiration of their requested extension.  The ODOT Defendants contend they had prepared a Motion to Dismiss prior to February 28, 2012, but did not file it, even though a Motion for Default Judgment had been filed against them, because they were waiting for the Court to grant their first request for extension of time.

When a party seeks leave to file an Answer or Motion to Dismiss instanter, Rule 6(b)(1) requires the moving party to establish both good cause and excusable neglect.  Factors to be balanced in determining whether excusable neglect has been established include:

> (1) the danger of prejudice to the nonmoving party,
> (2) the length of the delay and its potential impact on judicial proceedings,
> (3) the reason for the delay,
> (4) whether the delay was within the reasonable control of the

moving party, and
(5) whether the late-filing party acted in good faith.

*Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir.2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).  "Judgment by default is a drastic step which should be resorted to only in the most extreme cases." *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir.1983).  Decisions on the merits are highly favored in federal courts and any doubt should be resolved in favor of avoiding default judgment. *Id* at 846. In this context, where the denial of a Motion made pursuant to Rule 6(b) would possibly result in the entry of a default or default judgment, "the excusable neglect standard must be colored by the policy of the federal courts favoring resolution of actions on their merits."  *Coast to Coast Health Care Services, Inc. v. Meyerhoffer*, No. 2:10–cv–734, 2011 WL 2442656, at *7  (S.D. Ohio June 14, 2011).  Applying the standard in this light, the Court concludes that the Motion to File Motion to Dismiss Instanter should be, and is, **granted**.

The first two factors in determining excusable neglect somewhat overlap in this case, and the most compelling factor, especially given the policy disfavoring defaults, is the short length of the delay.  The ODOT Defendants were only two days beyond their own requested deadline.  As they point out, 10 of the 19 Defendants had not yet answered or were not yet served when the ODOT Defendants submitted their Motion for Leave to File Motion to Dismiss Instanter.  Plaintiffs' position in this lawsuit was not adversely affected during the two day time period.  As for the reason for delay, the Defendants contend their counsel had prepared the Motion to Dismiss but did not file it because he was waiting for the Court to grant his extension of time.  "By empowering the courts to accept late filings 'where the failure to act was the result of excusable neglect,' [ ] Congress

-13-

plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.  *Pioneer Inv. Servs.*, 507 U.S. at 388 (citation omitted).  Although it appears the delay was in the control of the ODOT Defendants and their counsel, there is no indication that they acted in bad faith.  This conclusion is, again, supported by the very short delay at issue.

Finally, the United States Army Corp of Engineers, Army Corp of Engineers Resource Management Director Wesley C. Miller, FEMA, and FEMA Director William Craig Fugate have not yet filed an Answer or responsive pleading.  The Court's docket indicates service by certified mail was executed on the Army Corp of Engineers through Miller on March 28, 2012 and on FEMA thorough Fugate on March 26, 2012.  Pursuant to Rule 12(a)(2), the 60 day time period for the United States and its employees sued in their official capacities to answer begins to run on the day after the United States Attorney is served in accordance with Federal Civil Rule 4(i).  There is no indication on the docket that the United States Attorney has been served.  Nevertheless, assuming the United States Attorney was properly served on the dates the Defendants were served, their responsive pleading would be due on May 25, 2012 and May 29, respectively.  These Defendants timely filed their Motion to Dismiss on May 21, 2012.

In summation, the Motion for Enlargement of Time filed by Aufuldish, Coulson, Deleone, Gills Sines, and Troy (ECF No. 10) and the Motion for Extension of Time filed by ODOT and Wray (ECF No. 13) are **granted.**  ODOT and Wray's Motion to file Motion to Dismiss Instanter (ECF No. 28) is also **granted**.  Plaintiffs' Motion for Default Judgment (ECF No. 14) is **denied**.  The Court must now consider the merits of the Motions to Dismiss filed by the Defendants.

**Federal Civil Procedure Rule 12(b)(1)**

Defendants first contend they are entitled to dismissal of claims pursuant to Federal Rule of Civil Procedure 12(b)(1) which allows dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the Complaint.  Fed.R.Civ.P. 12(b)(1).  Generally, Fed.R.Civ.P. 12(b)(1) Motions fall into two categories: facial attacks and factual attacks. Fed.R.Civ.P. 12(b)(1); *United States v. Richie*, 15 F.3d 592, 598 (6th Cir.1994).  A facial attack challenges the sufficiency of the pleading itself.  In contrast, a factual attack challenges the factual existence of subject matter jurisdiction. *See In re Title Ins. Antitrust Cases*, ---F.Supp.2d ----, 2010 WL 1267129 (N.D.Ohio 2010), citing, *Ohio Hosp. Ass'n v. Shalala*, 978 F.Supp. 735, 739 (N.D.Ohio.1997).   Where Defendants facially attack subject matter jurisdiction, this Court must accept the Plaintiffs' material allegations in the Complaint as true. *Ritchie*, 15 F.3d at 598.  Plaintiffs have the burden of proving subject matter jurisdiction in order to survive a Motion to Dismiss pursuant to Rule 12(b)(1). *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir.1996).  Lack of subject matter jurisdiction is a non-waivable, fatal defect which can be raised by the Defendants or by the Court. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir.1990).

Moreover, while *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a district court may dismiss an action *sua sponte* if the Complaint is so "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" as to deprive the court of jurisdiction. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)(*citing Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)).

## A.  Federal Clean Water Act/ Federal Water Pollution Control Act

Although Plaintiffs assert numerous claims, the central focus of the pleading appears to be violation of the Federal Water Pollution Control Act ("FWPCA"), or Clean Water Act ("CWA"), 33 U.S.C. §§ 1251-1387.  These statutes mandate that toxic discharges into the nation's waterways be monitored and regulated. To accomplish this, the CWA authorizes the Administrator of the United States EPA or authorized state agencies, to issue National Pollutant Discharge Elimination System ("NPDES") permits. 33 U.S.C. § 1342.  The precise nature of Plaintiffs' claims are unclear. It appears their main contention is that the EPA and various Ohio state and local agencies and officials have permitted private developers to discharge and dump pollutants into a local waterway in amounts that are not permitted by the Acts.

Plaintiffs do not specify under which provision of the FWPCA or CWA they are bringing this suit.  Generally, this would result in dismissal for failure to state a claim upon which relief may be granted.  *See Ashcroft v. Iqbal* , 129 S.Ct. 1937, 1949 (2009).  In this case, however, only one provision, 33 U.S.C. § 1365, permits private citizen suits.  The CWA's citizen's suit provision permits any individual who has an interest which is or may be adversely affected to sue to enforce any limitation established by a NPDES permit.  33  U.S.C. § 1365(a) and (g).  Private suits under the statutes are not without limitation.   The CWA restricts the remedies available to citizen Plaintiffs to injunctive relief, the assessment of civil penalties, and attorney's fees. *See* 33 U.S.C. § 1365(a), (d); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 175 (2000).  No compensatory damages are authorized under the CWA.  *See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 18.  Furthermore, all civil penalties are payable to the United States Treasury. *Laidlaw*, 528 U.S. at 175.  The CWA also "does not permit

citizen suits for wholly past violations." *Gwaltney of Smithfield v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64 (1987).  Finally, the CWA and the FWPCA require Plaintiffs to comply with notice requirements prior to filing suit.

Subsection (b) of 33 U.S.C. § 1365 provides:

No action may be commenced--

(1) under subsection (a)(1) of this section--

(A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

(2) under subsection (a)(2) of this section prior to sixty days after the plaintiff has given notice of such action to the Administrator,

33 U.S.C. § 1365(b).   The citizen suit notice provisions were intended to give the EPA an opportunity to resolve issues regarding the interpretation of complex environmental standards by negotiation, unhindered by the threat of an impending private lawsuit.  *Walls v. Waste Resource Corp.*, 761 F.2d 311, 316-17 (6th Cir. 1985).  Compliance with the sixty day notice requirement, therefore, is a jurisdictional prerequisite to bringing suit under the citizen suit provisions of CWA and FWPCA.  *Id.*

Here, Plaintiffs do not allege they have complied with the notice requirements.  They state only that they "exhausted administrative remedies by submitting a formal written

-17-

Complaint/Grievance with Defendant(s) on September 29, 2011 to no avail."  (ECF No. 1 at 15).

It is well established that Plaintiffs have the burden of distinctly and affirmatively pleading the facts

forming the basis of subject matter jurisdiction.  *Madison-Hughes*, 80 F.3d at 1130.  The notice

requirements in §1365 are very specific.  Plaintiffs' general and vague allegation that they submitted

a written Complaint/Grievance to one or more of the Defendants does not suggest compliance with

the statute sufficient to set forth the jurisdictional predicate of actual notice.  *See Walls*, 761 F.2d

at 316-17.

## B.  Sovereign Immunity

In addition, Plaintiffs name United States Army Corp of Engineers, United States Army

Corp of Engineers Employee Wesley C. Miller, FEMA, and FEMA Director William Craig Fugate

as Defendants.  Miller and Fugate are sued only in their official capacities.  A suit against a public

servant in his official capacity imposes liability on the public entity he represents.  *Brandon v. Holt*,

469 U.S. 464, 471 (1985).  The claims against Miller and Fugate are therefore redundant to the

claims against the United States.

The United States, as a sovereign, is immune from suit unless it explicitly waives its

immunity. *United States v. Sherwood*, 312 U.S. 584, 590–91 (1941).  Congress defines the exact

terms and conditions upon which the government and its agencies may be sued and the terms of its

consent define the parameters of federal court jurisdiction to entertain suits brought against the

United States.  *United States v. Orleans*, 425 U.S. at 814; *Honda v. Clark*, 386 U.S. 484, 501

(1967).  A waiver of sovereign immunity must be strictly construed, unequivocally expressed, and

cannot be implied.  *U.S. v. King*, 395 U.S. 1,4 (1969); *Soriano v. U.S.*, 352 U.S. 270, 276 (1957).

There is no suggestion that the United States waived its sovereign immunity for the claims

Plaintiffs assert against it in this suit.   Their vague reference to "Federal FEMA and Presidential Executive Orders on Flood Plain Management,...as well as other clearly established Federal Policies/Procedures/Acts on Flood Plain Management" is not sufficiently specific to determine whether the United States has consented to suit.  (ECF No. 1 at 14).   Similarly, Plaintiffs' constitutional claims can only be asserted against a federal government employee in his or her individual capacity through a *Bivens*[2] action.  Plaintiffs bring claims against the Federal Defendants solely in their official capacity.  The United States has not consented to suit under *Bivens*.  *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir.1991).  The United States Army Corp of Engineers, Miller, FEMA, and Fugate are entitled to sovereign immunity and this Court lacks subject matter jurisdiction to consider the claims asserted against them.

The Federal Defendants also indicate they are entitled to sovereign immunity for any tort claim Plaintiffs may be bringing against them.  By enacting the Federal Tort Claims Act, Congress waived the United States' sovereign immunity under very limited circumstances for claims against the federal government arising from torts committed by federal employees who were acting within the scope of their employment.  28 U.S.C. §§ 1346(b)(1), 2679(d)(1); *United States v. Orleans*, 425 U.S. 807 (1976).  The parameters placed on the United States' consent to suit on these tort claims dictate that they "shall forever be barred unless...presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b).  The timely filing of an administrative claim is a requirement of the FTCA.  If the administrative requirements of the FTCA have not been fulfilled, the case must be dismissed for lack of jurisdiction. *Dolan v. U.S.*, 514 F.3d 587, 593 (6th Cir. 2008).  This Court cannot extend the waiver of immunity beyond what Congress

---

[2]     *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

intended.  *United States v. Kubrick*, 444 U.S. 111, 118 (1979).  Because section 2401(b) is a condition of the United States' waiver of immunity, it must be interpreted solely by reference to federal law.

Here, there is no indication that Plaintiff submitted the proper administrative claim to either FEMA or the Army Corp of Engineers prior to bringing this suit.  Although they allege they exhausted administrative remedies by submitting a formal complaint/grievance 95 form with Defendants on September 29, 2011, they do not indicate specifically to whom it was submitted, what was alleged on the form, and the specific response they received from the agencies.  In fact, the two federal agencies contend they did not receive an administrative tort remedy Form 95 filed by Plaintiffs.  (ECF Nos. 51-2, 51-3).  Plaintiffs' general allegation that administrative remedies were exhausted is insufficient to satisfy the jurisdictional prerequisite for filing this claim.

## C.  Eleventh Amendment

Similarly, Plaintiffs bring claims for monetary damages against ODOT, ODOT Director Jerry Wray, the ODNR, ODNR Director Scott Zody, the OEPA, and OEPA Director Scott Nally.  Wray, Zody, and Nally are sued in their official capacities.  These official capacity claims are construed against the State of Ohio.  *Brandon*, 469 U.S. at 471.  A State may not be sued in Federal Court unless it has consented to such a suit or its immunity has been properly abrogated by Congress.  The Eleventh Amendment is an absolute bar to the imposition of liability upon states and their agencies. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005); *Bouquett v. Clemmer*, 626 F. Supp. 46, 48 (S.D. Ohio 1985).  There is no suggestion that the claims against the State of Ohio and its employees fall outside of the protection of the Eleventh Amendment.  Plaintiff's claims for monetary damages against ODOT, Wray, ODNR, Zody, the OEPA, and Nally

are dismissed.

**D.  Federal Executive Orders, Statutes, or Acts on Flood Plain Management**

Plaintiffs' general claims of violation of FEMA and Presidential Executive Order on Flood Plain Management are so attenuated as to deprive the Court of jurisdiction.  *Apple*, 183 F.3d at 479. Plaintiffs do not even specify to which particular Order they are referring, and it is therefore unclear whether any of the proposed statutes or executive orders provide a private cause of action or whether they apply to any of the actions of the Defendants.  Absent some indication of the authority under which they assert a claim, this Court cannot determine if it has jurisdiction to entertain the matter.  Plaintiffs bear the burden of establishing jurisdiction.

**E.  Policies, Procedures and Acts of the Ohio EPA and Ohio DNR**

While the claims for violation of policies, procedures, and acts of the OEPA and ODNR are also too attenuated to establish an arguable basis for jurisdiction, this Court also lacks jurisdiction to require a state to comply with its own laws, policies, and procedures.  Whether state officers have violated state law in failing to follow administrative procedures is a state law question.  *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir.1993).  This Court lacks subject matter jurisdiction to order state officials to comply with state law.

**F.  Fifth Amendment Claims**

Included in the constitutional claims asserted by Plaintiffs are claims under the Fifth Amendment Takings Clause.  At the outset, the Court notes that Plaintiffs do not specify under which provision of the Fifth Amendment they are asserting their claims; however, only the Takings Clause appears to be at all relevant to the facts asserted in the pleading.

Among its other prohibitions against government infringement on individual rights, the Fifth

-21-

Amendment, made applicable to States and their subdivisions through the Fourteenth Amendment, provides that "private property [shall not] be taken for public use, without just compensation." U.S. CONST. AMEND. V.  To state a claim under the Takings Clause that is ripe for federal court review, Plaintiffs must first demonstrate that state compensation procedures, assuming they exist and are adequate, have been exhausted.  *River City Capital, L.P. v. Bd of Cty Com'rs, Clermont Cty, Ohio*, 491 F.3d 301, 306-09 (6th Cir. 2007).

A property owner has not suffered a violation of the Takings Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such recompense.  *Id*.  The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. *Williamson Cty Regional Planning Com'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194-95 (1985).  The Fifth Amendment also does not require that payment be made in advance of, or contemporaneously with, the taking.  *Id.*  All that is required is that a "reasonable, certain and adequate provision for obtaining compensation " exist at the time of the taking.  *Id.*  If the government has provided an adequate process for obtaining payment, and if resort to that process results in just compensation, then the property owner has no claim against the Government under the Takings Clause.  *Id.*  Likewise, if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until he or she has used the procedure and been denied just compensation.  *Id.; see Texas Gas Transmissions, LLC v. Butler County Bd. of Com'rs*, 625 F.3d 973, 976-77 (6th Cir. 2010).

The Supreme Court has ruled that constitutional takings claims are not ripe for federal court review until state compensation procedures, assuming they exist and are adequate, have been

-22-

exhausted.  *Williamson Cty Reg'l Planning Comm'n*,  473 U.S. at 195.  Before exercising jurisdiction over a Takings Clause claim, the Court must ensure that the relevant state compensation procedures are "reasonable, certain, and adequate." *River City Capital, LP v. Bd. of Cty Comm'rs, Clermont Cnty., Ohio*, 491 F.3d 301, 307 (6th Cir.2007)(citations omitted).  The Sixth Circuit Court of Appeals has held unambiguously that Ohio affords such a procedure through an action for mandamus to compel a government entity to institute appropriation proceedings against the private property owner. *Id*. (citing *Coles v. Granville*, 448 F.3d 853, 865 (6th Cir.2006)); *see Texas Gas Transmissions, LLC*, 625 F.3d at 977.  This procedure, as set forth in Ohio Revised Code §§163.01 to 163.22, must be followed regardless of whether a physical or regulatory taking is at issue.  *River City Capital, LP*, 491 F.3d at 307.

"Ripeness is more than a mere procedural question; it is determinative of jurisdiction.  If a claim is unripe, federal courts lack subject matter jurisdiction and the Complaint must be dismissed." *Texas Gas Transmissions, LLC*, 625 F.3d at 977 (citation omitted).  A Federal Court must determine whether a claim is ripe for review, "even if neither party has raised this issue." *Id*. Plaintiffs have not demonstrated that they have instituted any such proceedings in State court.  This claim is not ripe for adjudication and this Court lacks subject matter jurisdiction to consider it.

## Federal Civil Procedure Rule 12(b)(6)

Defendants also assert that Plaintiffs' causes of action fail to state a claim for relief under Federal Civil Rule 12(b)(6).  When deciding a motion to dismiss under Rule 12(b)(6), the function of the Court is to test the legal sufficiency of the Complaint.  In scrutinizing a Complaint, the Court is required to accept the allegations stated in the Complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), while viewing the Complaint in a light most favorable to the Plaintiffs. *Scheuer*

-23-

*v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976).

Although a Complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a Complaint survives a Motion to Dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). And a claim has facial plausibility when the Plaintiffs plead factual content that allows the Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949). Where the Complaint, however, is so "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion," a district court may dismiss an action *sua sponte*. *Apple*, 183 F.3d 479.

## A.  42 U.S.C. § 1983

Plaintiffs assert violation of their First, Fourth, Fifth and Fourteenth Amendments against Sines, Aufuldish, Troy, Gills, Kramer Kuns, Bell, Luhta, Galloway, Malchesky, Dawson, Wray, and Zody in their individual capacities. They also asserted these claims against Sines, Aufuldish, Troy, Gills, Luhta, Galloway, Malchesky, Wray, Zody, and Nally in their official capacities. The official capacity claims against Wray, Zody, and Nally were barred by the Eleventh Amendment. The official capacity claims against Sines, Aufuldish, Troy, Gills, Luhta, Galloway, and Malchesky, however, remain, along with all claims against the Defendants in their individual capacities.

## Official Capacity and Individual Capacity

An official capacity damages action against a county or municipal officer is the equivalent of a damages liability litigation targeted against the public entity he represents. *Will v. Michigan*

*Department of State Police*, 491 U.S. 58, 71 (1989). Sines, Aufuldish, Troy, and Gills are employed by Lake County, Ohio. The claims against these Defendants in their official capacity are therefore construed against Lake County. Luhta, Galloway, and Malchesky are Concord Township Trustees. Claims against them in their official capacity are construed against Concord Township.

As a rule, local governments may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a *respondeat superior* theory of liability. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691(1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. A municipality can therefore be held liable when it unconstitutionally "implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers." *Id.* at 690; *Graham v. County of Washtenaw*, 358 F.3d 377, 382 (6th Cir.2004). Plaintiffs must prove two basic elements: (1) that a constitutional violation occurred; and (2) that Lake County and Concord Township are responsible for that violation. *Id*. Respecting this second element, "[a] Plaintiff ... must 'identify the policy, connect the policy to [Lake County and Concord Township] and show that the particular injury was incurred because of the execution of that policy.' " *Id*. at 383 (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir.1994)). Plaintiffs must show that the municipality's policy (or lack thereof) was a "moving force" in the deprivation of the Plaintiffs' rights. *See Doe v. Claibome County, Tennessee*, 103 F.3d 495, 508 (6th Cir.1996).

Similarly, to state a claim against the named Defendants in their individual capacities, Plaintiffs must clearly show that each Defendant was personally involved in the activities which

-25-

form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). To state a *prima facie* case under §1983, Plaintiffs must establish that a person acting under color of state law deprived him or her of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). First, they must allege that there was a constitutional violation. *Id.* In addition, they must allege that each Defendant actively engaged in the behavior which directly caused the constitutional deprivation. *Id.* Furthermore, individual liability must lie upon more than a mere right to control employees and cannot rely on simple negligence. *Id.* Plaintiffs must prove that each of these Defendants violated their constitutional rights and in doing so played more than a passive role in the alleged violations or showed mere tacit approval of decisions or actions of others. *Id*.

Finally, each of the Plaintiffs must show that he or she was injured by the conduct of the specific Defendant. Claims asserted in a § 1983 action are personal to the injured party. *Shepard v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2003). Plaintiffs lack standing to assert violations of another's constitutional rights, even if the injured individual is a family member. *See Id.*

**First and Fourth Amendments**

Although Plaintiffs indicate the Defendants violated their First Amendment rights, there are no allegations in the Complaint which plausibly suggest how these rights were impinged by the Defendants. There is no indication of which First Amendment right or rights the Plaintiffs believe to have been violated, and the factual allegations in the Complaint provide no guidance in this respect. A Complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements. *See Schied v.*

-26-

*Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). District Courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Likewise, Plaintiffs fail to demonstrate that these Defendants violated their Fourth Amendment rights. The first clause of the Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated...." U.S. CONST. AMEND. IV. This text protects two types of expectations, one involving "searches," the other "seizures." A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property. *U.S. v. Jacobsen,* 466 U.S. 109, 113-114 (1984). Although Plaintiffs, again, do not specify which provision of the Fourth Amendment they believe to have been violated by the Defendants, the Court presumes based on the general nature of the allegations that Plaintiffs are claiming an unreasonable seizure of property.

Plaintiffs, however, fail to suggest the government interfered with their individual possessory interests in the real property. They allege, in general, that the Defendants approved the additions of storm drains or sewer pipes which flow toward the Jordon Creek flood plain. They further allege that this is, in some way, causing water to accumulate on their property when it rains significantly. These allegations do not suggest Plaintiffs were deprived of their possessory interest in the property and there is no indication that they have been forced by the government to leave or give up physical possession of it. The actions described in the Complaint do not constitute a seizure under the Fourth Amendment.

-27-

Furthermore, there are no allegations that connect any of the individual Defendants to the alleged deprivation.  A blanket or vague statement against a broad and diverse group of Defendants is not sufficient to establish individual liability. *Rizzo*, 423 U.S. at 371.

**Fourteenth Amendment Due Process**

In addition, Plaintiffs fail to state a claim for denial of due process.  They, once again, do not provide factual allegations or explanation of this claim.  It is therefore difficult to determine which actions of the Defendants, if any, Plaintiffs are alleging denied them due process.

The Fourteenth Amendment provides that "no person shall be deprived of life, liberty, or property, without due process of law."  U.S. CONST. AMEND. XIV.  In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986).  It does not prohibit every deprivation by the government of a person's life, liberty or property. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).  Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983. *Id*.

The Due Process Clause has a procedural component and a substantive one.  The two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power.  A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a choice to infringe upon a person's constitutionally protected property interest.  It simply requires that the government provide "due process" before making such a decision. *Howard v. Grinage*, 82 F.3d 1343, 1349-53 (6th Cir. 1996).  The goal is to minimize the risk of erroneous deprivation, to assure

fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process. *Id*.  Procedural due process requires that an individual be given the opportunity to be heard "in a meaningful manner." *See Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir.1983).  Procedural due process claims do not consider the egregiousness of the deprivation itself, but only question whether the process accorded in conjunction with the deprivation was constitutionally sufficient. *Howard*, 82 F.3d at 1350.  Although the existence of a protected liberty or property interest is the threshold determination, the focus of this inquiry centers on the process provided, rather than on the nature of the right.

Substantive due process, on the other hand, serves the goal of preventing "governmental power from being used for purposes of oppression," regardless of the fairness of the procedures used. *See Daniels v. Williams*, 474 U.S. 327, 331 (1986). Substantive due process serves as a vehicle to limit various aspects of potentially oppressive government action. *Id*.  It serves as a check on legislation that infringes on fundamental rights otherwise not explicitly protected by the Bill of Rights; or as a check on official misconduct which infringes on a "fundamental right;" or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "shocking to the conscious," as to rise to the level of a constitutional violation. *Howard*, 82 F.3d at 1349.

**Procedural Due Process**

To state a claim for denial of procedural due process, Plaintiffs must plead and prove either that they were deprived of liberty or property as a result of an established state procedure that itself violates due process rights; or that the Defendants deprived them of liberty or property pursuant to a random and unauthorized act and available state remedies would not be adequate to redress the

deprivation. *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir 1991); *see Vicory v. Walton*, 721 F.2d 1062, 1064 (6th Cir. 1983).  Again, the basis of this claim is unclear from the Complaint.  It is possible Plaintiffs are alleging that the various Defendants have deprived them of their property in the same way as they allegedly took property without just compensation under the Fifth Amendment.  It is also possible Plaintiffs are alleging in some general sense that the Defendants have not followed all of the procedures delineated in the flood plain management regulations they claim are applicable to this situation.  There is no indication that Plaintiffs are challenging an established state procedure, statute or local ordinance.  It would therefore appear that a claim for denial of procedural due process would have to be based on a random and unauthorized act of a state or local government.

When a procedural due process claim is based upon alleged unauthorized acts of the Defendants, Plaintiffs must also plead and prove that state remedies for redressing the wrong are inadequate.  *Macene*, 951 F.2d at 706; *Vicory*, 721 F.2d at 1064.  The Supreme Court ruled that a person deprived of property through a random and unauthorized act by a state employee does not state a claim under the Due Process Clause merely by alleging the deprivation of property.  *River City Capital, L.P.*, 491 F.3d at 306 (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)).  The Constitution does not always require predeprivation process because it would be impossible or impracticable to provide a meaningful hearing before all deprivations.  Instead, the Constitution is satisfied by the provision of a meaningful postdeprivation process. *Id.*  The State's action, therefore, is not "complete" in the sense of causing a constitutional injury "unless or until the State fails to provide an adequate postdeprivation remedy for the property loss."  *Hudson v. Palmer*, 468 U.S. 517, 532, n. 12, (1984); *River City Capital, L.P.*, 491 F.3d at 306.

If Plaintiffs intended to assert another version of the Takings Clause claim, this Court has already found the existence of an adequate state remedy in a mandamus action.  *River City Capital, L.P.*, 491 F.3d at 306-07.  Plaintiffs have not alleged this remedy to be inadequate.

If Plaintiffs are alleging in some general sense that they were denied due process because some state officials failed to comply with an unspecified executive order, statute, administrative rule or policy, the claim must be dismissed.  Absent some indication of which order, statute, rule or policy was violated, it is impossible for the Court or the Defendants to determine whether Plaintiffs have an adequate state remedy available to them.  The allegations supporting this claim are so attenuated that they deprive the Court of jurisdiction.  *Apple*, 183 F.3d 479.

## Substantive Due Process

Plaintiffs' substantive due process claim is also subject to dismissal.  Due process claims of this nature involve official acts which cause a deprivation of a substantive fundamental right not explicitly protected by the Bill of Rights.  *Mertik v. Blalock*, 983 F.2d 1353,1367 (6th Cir. 1993).  In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience."  *See United States v. Salerno*, 481 U.S. 739, 746 (1987).  These actions are unconstitutional regardless of the procedural protections provided.  *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989).  A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a government agent.  *Id.* at 833.  The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights."  *Id.*

If Plaintiffs are asserting a claim for denial of substantive due process, it must be based on

conduct alleged to be so severe that it shocks the conscience, as their claims do not appear to impact a fundamental right not explicitly protected in the Bill of Rights.  The allegations in the Complaint are not directed to any specific Defendant and do not describe conduct which is so severe that it goes beyond the reaches of ordinary tort law.  Nothing in the Complaint suggests a denial of substantive due process.

**Fourteenth Amendment Equal Protection**

Plaintiffs also fail to assert a claim for denial of equal protection under the Fourteenth Amendment.  The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.  *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681 -682 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir.2005).  The threshold element of an equal protection claim is disparate treatment.  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir.2006).  When disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers.

Plaintiffs do not allege disparate treatment.  There is no suggestion in the pleading that any of the Defendants treated Plaintiffs differently than others who are "similarly situated" to them.  To be considered "similarly situated," Plaintiffs must prove that all of the relevant aspects of their situation are nearly identical to those of the individuals they allege were treated more favorably.  *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994).  There are simply no allegations which plausibly suggest Plaintiffs were treated differently than others.

**B.  42 U.S.C. § 1985 Conspiracy Claims**

Finally, Plaintiffs assert several conspiracy claims under 42 U.S.C. § 1985.  The first two parts of this claim are based on Plaintiffs' allegation that Lake County and Concord Township Defendants would not release documents requested by Plaintiffs under the Freedom of Information Act.  The Freedom of Information Act, however, is applicable only to federal agencies. 5 U.S.C. § 551(1).  In this case, the named Defendants are local county and township employees.  They do not fall within the statutory definition of an agency and are not bound by the terms of the statute.  *See* §5 U.S.C.  551(1)(A)-(H).

Moreover, Plaintiffs have not stated a claim under 42 U.S.C. §1985.  This statute provides a cause of action for conspiracies to deprive a person of equal protection under the law.  To state a claim pursuant to 42 U.S.C. § 1985, Plaintiffs must allege: (1) a conspiracy of two or more persons; (2) with the purpose to deprive, directly or indirectly, a person or class of persons of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) which causes injury to the person or property of Plaintiffs or deprivation of any right or privilege of a citizen of the United States. *Vakilian v. Shaw,* 335 F.3d 509, 518 (6th Cir.2003).  The acts that allegedly deprived the Plaintiff of equal protection must be the result of class-based discrimination. *Id.*

Plaintiffs do not state an adequate claim if their allegations are premised upon mere conclusions and opinions.  *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987).  They must make sufficient factual allegations to link two alleged conspirators in the conspiracy and to establish the requisite "meeting of the minds" essential to the existence of the conspiracy. *McDowell v. Jones,* 990 F.2d 433, 434 (8th Cir.1993) (holding that Plaintiff failed to state a claim for conspiracy pursuant to § 1985 for failure to allege a meeting of the minds).

Plaintiffs provide only conclusory allegations that the Defendants acted in concert and fail to present evidence showing an agreement between two or more persons existed to cause injury to them.  There are no factual allegations to establish any sort of "meeting of the minds."  Finally, there are absolutely no allegations of class-based discrimination that deprive Plaintiffs of equal protection of the law.  Absent these allegations, they have not established the elements of this cause of action.

Moreover, to the extent that Plaintiffs merely wanted to assert claims for civil conspiracy under 42 U.S.C. § 1983, they also fail to do so.  A civil conspiracy is an agreement between two or more persons to injure another by unlawful action.  Each conspirator need not have known all of the details of the illegal plan or all of the participants involved; however, Plaintiffs must show that there was a single plan, that the alleged co-conspirators shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.  *Hooks v. Hooks*, 771 F.2d 935. 943-44 (6th Cir.1985).  Unlike conspiracy claims under §1985, Plaintiffs need not prove class-based discrimination to sustain a claim for civil conspiracy.  Nevertheless, Plaintiffs still must plead civil conspiracy claims with some degree of specificity.  *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987).  Vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983. *Id.*

Plaintiffs fail to set forth factual allegations to plausibly suggest the existence of any conspiracy.  They do not allege a single plan, nor do they include facts that demonstrate each of the named Defendants shared in a single objective or committed an overt act in furtherance of the conspiracy.  The claim is stated solely as a legal conclusion which is not sufficient to state a civil conspiracy claim.

-34-

Defendants' Motions to Dismiss pursuant to Federal Civil Rule 12(b)(1) and 12(b)(6) are **granted**.  (ECF Nos. 5,11,12, 28-1, 34, and 51).  Although Lutha, Galloway, Malchesky, and Dawson did not file a Motion to Dismiss, the Court lacks subject matter jurisdiction to entertain the claims asserted against them.  *See Apple*, 183 F.3d at 479.  They are also dismissed from this action.

### III. CONCLUSION

Accordingly, the Motion for Enlargement of Time filed by the Lake County Defendants (ECF No. 10), the Motion for Extension of Time filed by the ODOT Defendants (ECF No. 13) and the Motion for Leave to File Motion to Dismiss Instanter filed by the ODOT Defendants (ECF No. 28) are **granted**.  Plaintiffs' Motion for Default Judgment (ECF No. 14) is **denied**.  Defendants' Motions to Dismiss (ECF Nos. 5, 11, 12, 28-1, 34, and 51) are **granted**.  Further, the Court lacks jurisdiction to consider the claims against Luhta, Galloway, Malchesky, Dawson, the United States Army Corp of Engineers, Wesley Miller, FEMA, and William Fugate.  They are dismissed from this action.  Because no causes of action are remaining, this action is **dismissed**.

Plaintiffs' Motions for Appointment of Counsel (ECF No. 2, and 50), and their Motions to Compel Discovery (ECF No. 37, 43, 44, 45, and 49) are **denied as moot**.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

---

[3]  28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.

**IT IS SO ORDERED.**

    S:/Christopher A. Boyko       
**CHRISTOPHER A. BOYKO**
**UNITED STATES DISTRICT JUDGE**

DATED:  May 25, 2012